# THE BALTIMORE AND POTOMAC RAILROAD COMPANY.
## *v.*
# WEBSTER.

RAILROADS; NEGLIGENCE; WITHDRAWAL OF CASE FROM THE JURY; INFANTS; CONTRIBUTORY NEGLIGENCE.

1. Where in crossing a city street occupied by railroad tracks a boy was injured by a moving train, which, in a suit against the railroad company, he claimed not to have seen because of his view having been obstructed by freight cars left standing on an adjoining track, it is for the jury to determine whether under all the circumstances it was negligence on the part of the company to have left the cars so standing.

2. When a given state of evidence is such in a case where negligence is charged, that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury.

3. As matter of defence it is incumbent upon defendant to show contributory negligence, unless shown in the proof produced by the plaintiff.

4. Where contributory negligence on the part of a child is alleged, it is for the jury to determine whether the child exercised such care as was reasonably to be expected from a person of his age and capacity.

No. 422.    Submitted April 5, 1895.    Decided May 6, 1895.

HEARING on an appeal by the defendant from a judgment on verdict in an action to recover damages for personal injuries. *Affirmed.*

At the trial, the plaintiff requested two instructions to the jury, both of which were granted over the objection of defendant, as follows:

"1. If the jury believe from the evidence that the plaintiff, in attempting to run around an engine or train approaching 9th street from the west at or about the time of the accident, was exercising that degree of care which, under like circumstances, would reasonably be expected of one of his years and capacity, and that he was prevented from seeing the train approaching from the east by cars standing on

defendant's tracks on the open space east of 9th street, which cars had been or were being there unloaded, and that he did not see the said train coming from the east until it was too late for him to get out of the way of the said engine or train approaching from the west without imminent danger of being run over, and should further find that in a reasonable effort to avoid such danger he fell or was thrown upon the track along which the said train was approaching from the east and was thereby injured, then the plaintiff is entitled to recover in this action."

"2. If the jury find from all the evidence that the plaintiff is entitled to recover in this action, then they shall award such damages as in their judgment will fairly and reasonably compensate him for the injury sustained by him in the past which they may find established by the testimony and for such prospective injury as they may find from the evidence will be the natural and probable consequence of the injury and for the pain and suffering caused to him by said injury as the jury may find to be established by the evidence."

The defendant presented the following ten prayers for instruction to the jury, those numbered 2, 3, 4, 5 and 10. of which were granted, and the others refused, to which refusal the defendant duly excepted, as follows:

"1. On the whole evidence submitted to the jury in this case the defendant is entitled to a verdict in its favor.

"2. If the plaintiff got on board the south-bound passenger train as it was going south along Maryland avenue, and fell off of the said train and thereby was injured, he cannot recover and the defendant is entitled to a verdict in its favor.

"3. If the jury shall be satisfied from the evidence that the plaintiff in this case was engaged in stealing a ride on the outgoing passenger train described in the evidence at the time of the accident, the verdict must be in favor of the defendant.

"4. If the jury shall be satisfied from the evidence that

the plaintiff did approach the south-bound passenger train going south, described in the evidence, for the purpose of getting upon it as it passed him, and whilst standing alongside of the train for that purpose fell, and in consequence of such fall received the injury complained of, then and in that case the defendant is entitled to a verdict in its favor.

"5. The jury are instructed that before they can find a verdict against the defendant railroad company they must be satisfied from the evidence that the defendant or its agents was guilty of negligence, and that such negligence caused the accident; and the jury are further instructed that the burden of proof is upon the plaintiff to show to the jury by satisfactory evidence that the railroad company was guilty of such negligence.

"6. If the jury shall be satisfied from the evidence that the plaintiff was proceeding north along and on Ninth street towards the crossing at the intersection of 9th street and Maryland avenue, and that when he approached towards said avenue he saw a freight train going east drawn by a locomotive engine, about to cross said 9th street, and that he then left 9th street and ran east in order to cross the track in front of and ahead of said engine and freight train, and that he did so cross in front of said engine, and that during the time he was crossing his head was turned towards and he was looking at the approaching engine, and that when he had so crossed the track ahead of said engine he encountered a passenger train, which was going south on the most northerly track, the engine of which train had already passed him, and that while he was between the said trains he received the injury of which he complains, he cannot recover and the verdict must be in favor of the defendant.

"7. The jury are instructed that although they may be satisfied that there were cars standing on the tracks between 8th and 9th streets at the time of the accident to the plaintiff, still that fact cannot be considered by the jury as evidence of negligence on the part of the defendant.

"8. The jury are instructed that the fact that cars were standing on the tracks on Maryland avenue between 9th and 10th streets at the time of the accident cannot be considered in this case as evidence of negligence on the part of the defendant.

"9. If the jury shall be satisfied from the evidence that the plaintiff was proceeding north along and on 9th street towards the crossing at the intersection of 9th street and Maryland avenue, and that when he approached towards said avenue he saw a freight train going east, drawn by a locomotive engine, about to cross said 9th street, and that he then left 9th street and ran east in order to cross the track in front of and ahead of said engine and freight train, and that he did so cross in front of said engine, and that during the time he was crossing his head was turned towards and he was looking at the approaching engine, and when he so crossed the track ahead of said engine he encountered a passenger train, the engine of which train had already passed him, and that while he was between the said trains he received the injury complained of, then, in that case, the jury is instructed that it is immaterial whether or not cars were standing on Maryland avenue between 8th and 9th streets, or 9th and 10th streets, and the fact that cars were standing in either of the spaces mentioned cannot be considered by the jury as evidence of negligence on the part of the defendant or its agents."

The court, of its own motion, charged the jury as follows, the portions of the charge enclosed in brackets being excepted to by the defendant:

" This case, as it now stands, is the case of Joseph W. Webster against the Baltimore & Potomac Railroad Company. The suit was originally instituted by Joseph W. Webster, by his next friend, Julia F. Webster, against the Baltimore & Potomac Railroad; but Joseph W. Webster, to whose use the suit was commenced; has, since the commencement of the action, become of age, and the suit is now prosecuted by him in his own name. I understand

counsel to claim that the action is tried upon the third count of the declaration and to say that the third count embraces their cause of action.

The third count, which is an amendment to the original declaration, charges that the defendant is a corporation owning and operating a railroad running through the city of Washington, upon certain streets in said city, and passes over tracks, sidings and switches which were located upon and known as 6th street, S. W., in said city, and extended from the depot of said defendant corporation down said 6th street into and along Maryland avenue, S. W., crossing and intersecting 9th street, S. W., and said avenue; that said defendant corporation also maintained and used, on and before said 11th day of December, A. D. 1884, a large number of railway tracks, sidings and switches to wit, four tracks and nine switches, on a certain open space or reservation formed by the intersection of said Maryland avenue with Virginia avenue and C street, S. W., on which said tracks and sidings, on said 11th day of December, A. D. 1884, and for a long time previous thereto the defendant was accustomed, wrongfully, improperly and unlawfully to store freight and other cars in great number, to wit, to the number of fifty at one time, and to leave the same so stored for an unreasonable length of time, frequently for the length of thirty-six hours at a time; that heretofore, to wit, on the said 11th day of December, A. D. 1884, the plaintiff, while attempting to cross said Maryland avenue at its intersection with 9th street, S. W., upon the public highway, in said city aforesaid, as he had a right to do, was prevented by a train of cars drawn by a locomotive engine, approaching from the west, along one of said tracks operated by said defendant, and thereupon attempted to avoid and did avoid said engine by entering upon said open space or reservation as he had a right to do, but before getting across the more northerly-of said tracks on said open space and at a distance eastward from 9th street, of, to wit, forty feet, he was thrown down and caused to fall by a train of cars drawn by

a locomotive engine approaching from the east upon defendant's track, then and there under the direction and control of the defendant, through the carelessness and negligence and improper and unlawful conduct of the servants of said defendant, so that by means of the premises and the further carelessness and negligence of the defendant in not providing any warning of the approach of said engine and train of cars and in not properly guarding said track at said crossing and by the wrongful and unlawful storage on said open space of a large number of freight cars as aforesaid, thereby preventing the plaintiff from seeing the said engine and train of cars approaching from the east, one of the wheels of one of said cars passed over the foot of the plaintiff and so crushed and injured it that the same had to be amputated, and the plaintiff was otherwise greatly bruised, wounded and injured, and by reason thereof he became and was sick, sore and disordered for a long space of time, to wit, —, during all of which time the plaintiff suffered and endured great pain and has been rendered permanently disabled and thereby prevented from engaging in occupations yielding money, which he might and otherwise could have done, to the damage of the plaintiff in the sum of twenty thousand dollars.

"To this declaration the defendant has pleaded the general issue or put in the plea of not guilty, the effect of which is to impose upon the plaintiff the burden of proving by a preponderance of the evidence all of the material averments in the declaration—that is, all those averments in the declaration necessary to be proved in order to maintain his action, which he has set forth in this declaration I have read in your hearing.

" [It will be necessary for the plaintiff, gentlemen, to prove that the defendant had upon this reservation described in the declaration the tracks alleged in the declaration ; that upon these tracks there were cars parked or placed, and that the plaintiff in passing from the south and intending to cross these tracks was prevented by these cars

from witnessing the approaching train or noticing the approaching train from the east. It would seem, however, from the testimony of the plaintiff himself that he was attracted by reason of the smoke from the engine to the train approaching from the west, and whether that was all that was necessary or essential for him to notice in passing across the track of the railroad is a matter for you to determine ; whether, if the cars had not been there, he would have had a full view of the train and could have determined more accurately the exact distance it was away from the place where he was approaching the track, and whether that in anywise interfered with him or caused the injury which he received is a question for you to determine in connection with all the testimony in the case.]

[" It would appear from the evidence that a train was approaching at about the same time from the east. It appeared further that the injury was caused by one of the wheels or more than one of the wheels attached to this train approaching from the east passing over his leg. It is claimed by the plaintiff in this case that it is shown by the evidence that these cars were parked upon the south track, at least, of the railroad, on the east of 9th street, in such manner as that it prevented the plaintiff from discovering the fact of a train approaching from the east until after he had passed over these two tracks between two cars that were separated some little distance east of 9th street, and as he was passing over the third track from the south—that would be the first one on which he could, had he endeavored to do so, have seen this train—and that his attention having been previously attracted to the approaching train from the west, and he having no intimation of the train approaching from the east he, at that point of time, as he testifies, I believe, was devoting his attention to the train approaching from the west—you will remember his statement about it—until he reached some point—the exact point I will not undertake to state—when he looked and saw that there was a train passing from the east which

would intercept him and prevent him from passing entirely beyond the railroad tracks until this train had passed.]

["It is claimed on the part of the defendant that the plaintiff, if he had passed through in between the cars that were upon the first and second tracks, the most southerly tracks, could have seen this train, if he had looked at the approaching train from the east, and could have prevented this injury by remaining south of the third track—that is, south of the track upon which the train was approaching from the west—and not have passed over the track until after the trains had passed.   It is further argued, I believe, by counsel for the defendant, that the plaintiff might have, according to his own testimony, after passing over the track on which the freight train was approaching from the west, safely, so far as that train was concerned, or at least having passed over it before it reached the point where it passed while he was situated between the two trains—at this point he might have so conducted himself as to have been uninjured by standing erect or falling down upon the ground between the two tracks.

"You heard the statement of the plaintiff in relation to his recollection of the matter and as to what he did, so far as he remembers.   There is a point of time at which he states that he became confused for some reason and he is unable to state now what it was.   He says that he does not recall what he did, but only recollects that he was thrown, and that he received the injury.]

"In all of these cases, gentlemen of the jury, there are certain elements entering into them and into every trial which it is well that you should understand and which it is proper that I should endeavor to explain to you.   A defendant can only be held liable in this action upon the proof that the defendant was negligent in regard to its duty, and that such negligence directly caused the injury of which the plaintiff complains.   It must not be some remote negligence, but some negligence which directly causes the injury, and if it does appear in this case that the defendant

was negligent, and that its negligence directly caused the injury of which the plaintiff complains, and yet if the plaintiff was also negligent in such way that his own negligence contributed directly to cause his own injuries, then the plaintiff cannot recover, because where a plaintiff is himself negligent and that negligence contributes directly to his injury it is impossible to apportion what degree of negligence would be attributed to the plaintiff and what to the defendant, and in such cases the law provides that the plaintiff shall not recover ; so that it must be a case in order to authorize you to return a verdict for the plaintiff where it appears that the defendant has been negligent in the manner which is charged against him in the declaration and where that negligence has contributed directly to the injury of which the plaintiff complains, and it must appear that the plaintiff has not himself been negligent in such way as to contribute directly to his own injury.

" In this case there is another element to be considered by you in reference to this very matter of which I have just spoken. The law very justly and properly looks to the status of the parties. If the plaintiff is a person of unsound mind or an infant of tender years, not having reached the years of discretion or accountability, the law will take that into account and will say that you cannot hold such a person to the strict rule of care and prudence that would apply to an adult person possessing the intelligence that men usually have ; but in such a case the jury are to look carefully to see to what extent the faculties of mind and judgment of the plaintiff are undeveloped, or, if there is unsoundness of mind, to what extent that would probably interfere with any proper action of a prudent character on the part of the plaintiff so as to excuse the plaintiff for not having manifested all the care, prudence, and judgment that an ordinary person of ordinary intelligence of full age should have exercised. In such cases it is the duty of the court to direct the jury to determine from all the evidence the extent of the knowledge, intelligence and

judgment possessed by the plaintiff in a particular case and to adopt such a rule with regard to holding him accountable for the exercise of prudence and care as in their judgment would be just in a particular case depending upon what the evidence shows as to the knowledge, ability and development of judgment of the plaintiff.

" That will be your duty in this case. [The plaintiff in this case was a boy. I believe the evidence shows that he was not quite twelve years of age—a few months less than twelve years of age. From the evidence you will probably be able to form an estimate of how well developed he was intellectually and what knowledge he had of the railroads and the running of trains and matters of that sort. It will be for you to say how far a boy of that age, under the circumstances in which the evidence shows this plaintiff was placed—how far, if at all, he, in the first place, failed to exercise such care and prudence as an ordinary person would exercise, if you find that he did fail to exercise such care and prudence as an ordinary person would have exercised. Then it will be your duty to determine whether or not because of his age and want of full judgment and full knowledge and intelligence of an adult person—an ordinary adult person possessing ordinary faculties—whether upon that account, in your judgment, he should be excused for any failure that you may determine from the evidence existed with regard to what he himself did before he received the injury or at the time he received it. If you should find that, taking into view the capacity of the boy, as shown by the evidence, his age, that he was not guilty of any such imprudence as could be regarded as a fault upon his part, his age considered and his faculties considered and his knowledge and intelligence considered, then if you shall find that the defendant was guilty of negligence in the manner charged in this declaration by so placing cars and leaving them parked upon the tracks between 8th and 9th streets as to have prevented him seasonably from noticing the approaching train from the east, and in consequence

of that he received his injury, then the defendant would be liable to respond in damages to the plaintiff for the injury.]

"I have been requested by the plaintiff to give you the following instruction in the charge, which I do, although it covers substantially the same ground I have already stated." The court here read the first instruction granted on behalf of the plaintiff.

" There are some prayers which have been requested by the defendant which will also be given." The court here read the instructions numbered 2, 3, 4 and 5, requested on behalf of the defendant, and proceeded :

" If you shall find that the defendant was guilty of negligence and that such negligence caused the injury to the plaintiff and that the plaintiff was not himself responsible for the injury, then it will be your duty to find a verdict for the plaintiff and to assess the damages to which he is entitled. On that subject I am asked by the plaintiff to give you an instruction which, I believe, is a fair one and which, perhaps embraces all that it is necessary to say on that subject." The court here read the said instruction.

" You will see by this instruction that you are to give fair and reasonable damages for the injury, looking to the evidence to determine in your own minds what the injury is and to what extent it will be an injury to the plaintiff, as well as the extent to which it has already injured him, and also for the pain and suffering, as shown by the evidence, which you may fairly infer he suffered in consequence of this injury which he is shown to have received. I think of nothing further to say to the jury."

*Mr. Totten* : " In the closing address particularly, your honor, the argument was insisted upon that the railroad company had violated some law or some duty in putting down at this point and maintaining as many tracks as there were there. For that reason I desire to submit this proposition to the court to be given to the jury :

" The jury are instructed that the defendant company had the lawful right to put down, maintain, and use the four

railroad tracks on Maryland avenue at the junction of said
avenue with 9th street, in addition to the passenger or most
northern track."

*Mr. Maddox:* " For the purposes of this case and so
far as that instruction is concerned we do not object to the
number of tracks, but to the unlawful use of them."

*The Court:* " This instruction, not being objected to by
counsel for the plaintiff, will be given :

" The jury are instructed that the defendant company
had the lawful right to put down, maintain, and use the
four railroad tracks on Maryland avenue at the junction of
said avenue with 9th street, in addition to the passenger or
most northern track.

" That is true.. [It is not claimed, as I understand it,
by the plaintiff in this case, or if it was claimed I did not
notice it, that the tracks were unlawful at that point. But
the claim is that there was an unlawful and improper use
made of the tracks by placing cars upon the tracks to the
right and to the left of 9th street where it crosses the
tracks, there to remain until unloaded, in some instances,
and there remaining to the injury of the plaintiff by pre-
venting him from seeing approaching trains when he was
approaching the track for the purpose of crossing. The
claim is that they had no right to leave cars upon those
tracks on the right and left of 9th street, thereby impeding
the view of the plaintiff and others who might desire to
cross and preventing them from seeing approaching trains.
That I understand to be the ground of the plaintiff's claim.
It is for you to say whether that was shown to be so from
the evidence and whether in fact that had anything to do
with the injury which the plaintiff received.

" If you find from the evidence that the placing of those
cars on these tracks to the right of 9th street directly
caused the injury which he received and prevented him
from discovering the train until it was too late for him to
take care of himself, and if you find that he is not in fault,

under the instructions which I have already given you, it will be your duty to return a verdict for the plaintiff."]

The further material facts will be found stated in the opinion.

*Mr. Enoch Totten* for the appellant :

1. The first instruction granted on behalf of the plaintiff was erroneous, because it authorizes the jury to find a verdict for the plaintiff if they should find two facts to exist: First, that he was prevented from seeing the train approaching from the east by cars standing on defendant's tracks; and, second, that he did not see this passenger train until it was too late for him to get out of its way. This instruction was wholly wrong. The plaintiff was bound to look and listen. He was familiar with the ground and with the trains, and passed this spot every day on his way to school. He was quite old enough to know of the danger of running races with trains, and of the perils of a collision with them. It was held by the Court of Appeals of Maryland that a child five years old who undertook to run under a moving train in the streets of Baltimore could not recover. *McMahon* v. *Mayor*, 39 Md. 449.

2. The plaintiff was entitled to no abatement from his obligation to look and listen before running upon a railroad track because of his age. He was perfectly accustomed to trains and these tracks ; he was 12 years old and bright and active. If any weight is to be given to the evidence of the defendant, he was accustomed to jumping on and off moving trains and of " stealing rides " whenever he got a chance. If this is correct, the instructions of the court given orally on this subject were erroneous. This boy was as capable of taking care of himself among these tracks and trains as anybody. He was not an infant of tender years, and the court committed error by leaving it to the jury to consider his responsibility. It seems to be the better rule, supported as well by reason as authority, that

children of ordinary brightness, from 7 or 8 years of age and upwards are chargeable with contributory negligence in the same way as adults.   *Gillespie* v. *McGowan*, 100 Pa. St. 144 : in this case the child was 7 years and 10 months old ; *McMahon* v. *Mayor*, 33 N. Y. 642 : in this case the child was 11 years old ; *Atchenhagen* v. *Watertown*, 18 Wis. 331 : here the child was 13 years old ; *Plumley* v. *Birge*, 124 Mass. 57 : here the child was 13 years old.   See also *Railroad Co.* v. *Delaney*, 82 Ill. 198 ; *Naghey* v. *Railroad Co.*, 88 Pa. St. 35 ; *Hestonville Railroad Co.* v. *Connell*, 88 Pa. St. 520 ; *McMahon* v. *Railroad Co.*, 39 Md. 449.

*Mr. Samuel Maddox* and *Mr. R. Ross Perry* for the appellee :

1. Whatever may be the law elsewhere concerning the contributory negligence of infants, it is well settled in this jurisdiction by the decisions of the Supreme Court of the United States in the cases of *Railroad Co.* v. *Gladmon*, 15 Wall. 401 ; *Railroad Co.* v. *Stout*, 17 Wall. 657.   " The care and caution required of a child is according to his maturity and capacity only, and this is to be determined in each case by the circumstances of that case."

That in this jurisdiction the contributory negligence of the plaintiff is a matter of affirmative defence, with respect to which the burden of proof is on the defendant, is too well settled to need quotation of authority.

Equally well settled is it that the question of contributory negligence must be submitted to the jury, as was done in this case in the charge of the court, unless in the particular case the conclusion follows, as matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish.   *Dunlap* v. *Railroad Co.*, 130 U. S. 649; *Kane* v. *Railway Co.*, 128 U. S. 91 ; *Jones* v. *Railway Co.*, 128 U. S. 443.

2. The public streets of this city are primarily for the use of its citizens.   If railroad companies are permitted to use

them, such use is a great privilege and must be availed of by the companies with due regard to the rights of citizens. It is not such due regard to so occupy these streets as either permanently to obstruct them or to render passage across them more dangerous than it would otherwise be. A citizen desiring to cross said street is not obliged to refrain from doing so in consequence of such obstruction ; he is at liberty to cross, using such care as a reasonable person would use under all the circumstances of the particular case. If a citizen using proper care in so crossing is injured by an approaching train which he might have seen but for the interposition of such obstructions, the railroad company is responsible for the injnry occasioned by the existence of such obstruction.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an action by the plaintiff, Joseph W. Webster, for personal injuries suffered by him, occasioned, as he alleges, by the negligence of the defendant company. The accident occurred on the 11th of December, 1884, when the plaintiff was a boy less than twelve years of age. The case was tried in the court below in January, 1895, after the plaintiff had nearly attained his twenty-second year of age. The trial resulted in a verdict and judgment for the plaintiff, and the defendant has appealed.

The accident producing the injury happened on Maryland avenue in this city, between Eighth and Ninth streets, south-west. The defendant company, at the time of the accident, maintained and used on Maryland avenue four or five railroad tracks, the most northerly of which was generally used for passenger trains leaving the depot at Sixth street, and going south by way of the Long Bridge over the Potomac River. And it appears that the plaintiff was endeavoring to cross the tracks of the railroad between Eighth and Ninth streets, when he was run over by a passenger train on the north track and was severely injured.

According to the plaintiff's own testimony, and he was the principal witness that testified in support of his claim, he says, that about half past 5 o'clock p. m., he started for home from the south side of Maryland avenue in a run northward, along Ninth street towards Maryland avenue; and when approaching the railroad tracks he saw the smoke of a train coming from the direction of the Long Bridge, but thought he could get across the tracks; that a number of freight cars were standing on the track, extending eastwardly from Ninth street towards Eighth; that he turned to the right and ran through an opening between the cars; that he was looking at the train coming from the Long Bridge and did not observe any other train. But as he got on the other side of the car, he saw the passenger train coming from the depot " right on " him; that he could not have turned back then, because the freight train was almost on him; that he could not, before passing through the opening between the standing cars, see the train coming from the east (from the depot), because of the cars obstructing his view; that the next thing he remembered was both engines passing; that he could not say which train ran over his foot; that after the accident he was taken home by persons who came to his assistance.

The plaintiff was cross-examined by counsel for the defendant at great length; but such cross-examination brought out nothing materially changing the substance of the examination in chief, as we have stated it. There was other testimony produced, but nothing that affects the legal questions that are presented on this appeal.

At the close of the evidence the defendant asked an instruction from the court that the verdict of the jury should be rendered for the defendant. But that request was refused, and we think rightly so. There is no denial of the fact that there were freight cars standing on the tracks between Ninth and Eighth streets; and if they were, as contended by the plaintiff, left standing there unnecessarily and improperly, and such standing cars did prevent a view of

the moving train that inflicted the injury upon the plaintiff, and such injury would not have occurred but for such obstructed view of the moving train, then, clearly, it was right and proper that those questions should have been submitted to the jury for their determination, as showing negligence on the part of the defendant. The unauthorized act of allowing the cars to stand on the tracks in one of the thoroughfares of the city, which all persons have a right to use, and where such standing cars might be the means of exposing people to danger, cannot be otherwise regarded than an act of negligence, if not as a positive nuisance. Hence the court below was quite right in rejecting the seventh and eighth prayers of the defendant for instruction, which requested the court to declare to the jury that the allowing the cars to stand on the tracks in the avenue between Eighth and Ninth, and Ninth and Tenth streets, could not be considered as evidence of negligence on the part of the defendant. Under the circumstances in proof, the court could not withdraw the case from the jury. The court could only determine the question, as matter of law, whether there was any evidence tending to prove the negligence complained of; and if such evidence was found to exist, it was the duty of the court to submit it to the consideration of the jury. Where a given state of evidence is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury; but where the evidence is such that all reasonable men must draw the same conclusion from it, the question of negligence is one of law for the court. *Grand Trunk Railway* v. *Ives*, 144 U. S. 408, 417. Or, as said by the court in a subsequent case, " The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them, or, in other words, a case should not be withdrawn from the jury unless the conclusion follows as matter of law that no recovery can be had upon any view which can be properly taken of the facts the

evidence tends to establish." *Gardner* v. *Mich. Central Railroad Co.*, 150 U. S. 349, 361.

Applying the principles just stated, it would seem to be clear that the case was fairly and properly submitted to the jury, and that there was no error in refusing the first prayer of the defendant.

With respect to the question of contributory negligence of the plaintiff, that was also properly submitted to the jury. As matter of defence, it was incumbent upon the defendant to establish such contributory negligence, unless shown in the proof produced by the plaintiff. The plaintiff, at the time of the injury received, being a boy under twelve years of age, as shown by the proof, could not be expected to exercise the same degree of care and caution to avoid danger to himself as would be exacted of an older or an adult person, under like circumstances. The question in all such cases is whether the child has exercised such care as was reasonably to be expected from a person of his age and capacity; and the mere fact that he was old enough to know the probable consequences of the act which caused his injury will not conclusively determine that he was negligent in a degree to defeat his right to recover, since it is not to be expected that a child will exercise the measure of prudence or caution in avoiding danger that we expect of an adult. *Railroad Co.* v. *Gladmon*, 15 Wall. 401; *Railroad Co.* v. *Stout*, 17 Wall. 657, 660; *Plumley* v. *Birge*, 124 Mass. 57. Of course, if a child gets into a place of danger and is injured without the fault or culpable negligence of the defendant, there can be no ground of action. But, on the evidence in this case, the court could not declare, as matter of law, that there was contributory negligence, and therefore there was no right to recover. The evidence presented a case to be passed upon by the jury, though there were grounds for a diversity of conclusions from that evidence. The jury appear to have been very fully and clearly instructed, both as to the negligence of the defendant and the contributory negligence of the plaintiff,

and, indeed, as to the entire case, by granting the first prayer of the plaintiff, and the fifth prayer of the defendant. These prayers were reiterated and enforced in the general charge to the jury.

The first special instruction granted upon request of the plaintiff is as follows:

" If the jury believe from the evidence that the plaintiff, in attempting to run around an engine or train approaching 9th street from the west at or about the time of the accident, was exercising that degree of care which under like circumstances would reasonably be expected of one of his years and capacity, and that he was prevented from seeing the train approaching from the east by cars standing on defendant's tracks on the open space east of 9th street, which cars had been or were being there unloaded, and that he did not see the said train coming from the east until it was too late for him to get out of the way of the said engine or train approaching from the west without imminent danger of being run over, and should further find that in a reasonable effort to avoid such danger he fell or was thrown upon the track along which the said train was approaching from the east and was thereby injured, then the plaintiff is entitled to recover in this action."

And by the fifth prayer of the defendant, which was granted, the jury were instructed "that before they can find a verdict against the defendant railroad company they must be satisfied from the evidence that the defendant or its agents was or were guilty of negligence and that such negligence caused the accident; and the jury are further instructed that the burden of proof is upon the plaintiff to show to the jury by satisfactory evidence that the railroad company was guilty of such negligence."

There were three other special instructions granted at the instance of the defendant, which fully covered grounds of defence taken by the defendant in the course of the trial, but which the jury did not find to be supported by the evidence. The sixth and ninth prayers of the defendant were

properly rejected, if for no other reason, because they wholly ignored the fact of the qualified degree of care and diligence required of the plaintiff by reason of his age, and withdrew from the consideration of the jury all possible effect of the standing cars, on the conduct of the plaintiff in placing himself in a position of peril, according to his testimony, the credibility of which was exclusively for the jury to consider.

With respect to the general charge of the court to the jury, so far as the same has been excepted to, we perceive nothing in it inconsistent with the special instructions given and nothing of which the defendant can in reason complain. It may be, that sentences extracted from the charge, if read apart from their connection, might need qualification. But such qualification was given in the context, and the jury could not possibly have been misled by the charge taken in its entirety. *Evanston* v. *Gunn*, 99 U. S. 660.

Finding no error, the judgment will be affirmed.

*Judgment affirmed.*