ANN ELIZA RYERSON (PLAINTIFF BELOW), PLAINTIFF IN
ERROR, v. JAMES E. BATHGATE AND HENRY N. SWIFT
(DEFENDANTS BELOW), DEFENDANTS IN ERROR.

Argued December 3, 1901—Decided March 3, 1902.

Where the owner or occupier of lands, by express invitation, induces a
person to make use of a portion of the premises for an expressed
purpose, his liability is confined within the limits of the invitation
and does not extend to injuries received by the person invited while
using the premises for a purpose not expressed and not authorized
by the invitation.

On error to Essex Circuit Court.

For the plaintiff in error, *Edward Wade Benjamin.*

For the defendants in error, *Louis Hood.*

The opinion of the court was delivered by

PITNEY, J. This was an action of tort for negligence, and,
upon the trial, the plaintiff's evidence tended to prove the
following facts: The plaintiff, a woman sixty-one years of
age, kept a small place of business in Newark, and the de-
fendants were the proprietors of a meat-shop nearby, which
was in the charge of one Silvernail as manager. The plaintiff
owned a domestic cat of which she desired to be rid, and this
fact she made known to Silvernail, who told her that the de-
fendants needed a cat, and suggested that she bring it over
to them. This she did a few days later, and on arriving at
the meat-shop found Silvernail, and also Mr. Swift, one of
the defendants. As the plaintiff arrived at the place, the cat
jumped from her arms and ran home, whereupon Mr. Swift
said, "You must bring her over later." Accordingly, a few
days later, plaintiff again carried over the cat, and upon
entering the defendants' premises found Silvernail there
alone. As she entered, she told him that he must put the

cat in a closet or else she would run away again. Silvernail thereupon walked to the opposite side of the room, opened a door and said, "Put her in here." Plaintiff supposed it to be a closet, as she had requested him to put the cat in a closet. She testified that Silvernail only partially opened the door, "so that she could just get in to get the cat in," and that as he opened the door she anxiously ran and stooped to put the cat down, and did not see beyond the door, partly because it was dark there, and partly because a butcher's frock was hanging on the door. She says that she had the cat in her arms at the time, and it was scratching at her and she was anxious to get the cat out of her arms; that she did not look in, but took it for granted the opening led to a closet. In fact, the door opened upon a flight of stairs leading down to the cellar, and she stepped inside without looking, fell downstairs and sustained injuries, to recover damages for which she brought this action against the defendants. Upon the evidence above indicated the plaintiff rested her case, whereupon the court granted the defendants' motion to nonsuit. To this ruling exception was taken, and the writ of error brings that ruling here for review.

From the evidence, the jury would have had a right to infer that the entrance of the plaintiff upon the defendants' premises was for their mutual benefit, and not for her benefit solely. Thereupon the plaintiff invokes the rule of law which was made the basis of the decision of this court in *Phillips* v. *Library Co.*, 26 *Vroom* 307, and is exemplified in other recent cases, including that of Furey *v.* New York Central and Hudson River Railroad Co., decided by this court at the present term, viz., that the owner or occupier of lands, who, by invitation, express or implied, induces persons to come upon his premises, or to make use of the premises for a given purpose, is under a duty to exercise ordinary care to render the premises reasonably safe for such use. The application of this rule always depends upon the particular facts and circumstances of the case under consideration. The owner's liability for the condition of the premises is only co-extensive with his invitation. And it is incumbent upon the plaintiff to show,

not only that her entry upon the premises was by invitation of the owner, but also that at the time the injury was received she was in that part of the premises into which she was invited to enter, and was using them in a manner authorized by the invitation, whether express or implied. So far as Mrs. Ryerson's entry into the meat-shop is concerned, she was undoubtedly within the protection of the rule. The question is whether she was entitled to that protection when she attempted to enter the door that was partially opened by Silvernail. The plaintiff's injury did not result from any defect in the doorway or in the staircase. So far as the case shows, there was no such defect. She was injured because she inferred that the doorway led to a closet, and thereupon attempted to enter without taking observations herself or making further inquiries. Was she justified in doing so?

The case presents an instance of express invitation. In order to discover its extent, the words used by Silvernail are to be considered with reference solely to the plaintiff's expressed purpose and the act which accompanied his response. She said to Silvernail: "You must put her [the cat] in a closet or she will run away again." He said: "Put her in here," and partially opened the door. This amounted to a declination of her request that he should take the cat and put it in a closet. It did not even amount to a representation that the place indicated was a closet, in the ordinary acceptation of that term. By what he said and did, he merely represented that the door opened into a place which, when the door was promptly closed again, would securely detain the cat. She had expressed no purpose to enter with the cat. On the contrary, she had notified him that the cat would run away on the slightest opportunity, which carried the inference that it was as important for the plaintiff to remain outside as it was for her to put the cat inside. The natural thing for her to do was to place the cat through the opening with her hands and then permit Silvernail to quickly close the door so as to detain the cat.

If he had said, "This is a closet," she would have had a right to assume it to be such; but even so, in view of her

expressed purpose and his reply, she would have had no right to infer an invitation to enter. If she went in with the cat, the way of exit required for her own withdrawal would necessarily be wider than would suffice for the cat's escape. The cat was confessedly more active than she. If she went in, with the cat in her arms, it would, of course, be necessary for the door to be closed while she released the cat from her grasp. It is quite impossible to see how the plaintiff could then make her exit without permitting the cat to escape, especially if the closet was dark, and, in fact, she had not asked for a lighted one. It is sufficient to say that she had proposed no such roundabout programme to Silvernail.

The case shows that Silvernail formed a correct judgment of the exigencies of the problem, and that the plaintiff did not. He opened the cellar door barely wide enough to enable her to inject the cat according to the approved method, at the same time saying, "Put her in here." That was the extent of the invitation. The plaintiff exceeded the bounds of the invitation, and in doing so became a mere licensee. She was injured because she inferred, without warrant, that she might safely enter through the door, and because she thereupon did enter without taking observations herself or making further inquiries of Silvernail. The case rests upon its own peculiar circumstances, in view of which the disposition made of it by the trial court was correct.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, GARRISON, HENDRICKSON, PITNEY, KRUEGER, VOORHEES, VROOM. 9.

*For reversal*—DIXON, COLLINS, FORT, GARRETSON, ADAMS, VREDENBURGH. 6.